

SEALED

# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

| | | |
|---|---|---|
| United States of America<br>v.<br>**MARCUS BRANTLEY** | ) ) ) ) ) ) ) | Case No.<br>3:25-MJ-45-BW |
| *Defendant(s)* | | |

FILED
January 22, 2025
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 21, 2025__ in the county of __Dallas__ in the __Northern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) and (b) | Assaulting, Resisting, or Impeding a Federal Agent with a Deadly/Dangerous Weapon |

This criminal complaint is based on these facts:

See attached Affidavit of FBI Special Agent Daniel Berardicurti (incorporated herein by reference).

☑ Continued on the attached sheet.

*Complainant's signature*

FBI SA Daniel Berardicurti
*Printed name and title*

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1.

Date: 01/22/2025

*Judge's signature*

BRIAN McKAY, U.S. Magistrate Judge
*Printed name and title*

City and state: Dallas, Texas

## AFFIDAVIT

I, Daniel Berardicurti, ("Your Affiant"), a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn under oath, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since January 2019. I am currently assigned to the Dallas Field Office. Since joining the FBI, I have investigated violations of federal law, to include federal violations concerning assaults and robberies. I have gained experience through training classes and work conducting these types of investigations. Further, as a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2.      As part of my duties as Special Agent, I also investigate criminal violations relating to violent crimes, to include violations of 18 U.S.C. § 111(a)(1) and (b), Assaulting, Resisting, or Impeding a Federal Agent by Using a Dangerous and Deadly Weapon.

3.      18 U.S.C. § 111 provides in pertinent part:

(a)    General – Whoever-

    (1)    forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

(b) Enhanced Penalty - Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

4. The statements in this affidavit are based in part on information provided by other law enforcement officers and on my experience, training, and background as a Special Agent of the FBI. This affidavit is being submitted for the limited purpose of enabling a judicial determination of whether probable cause exists to issue an arrest warrant for **MACRCUS BRANTLEY ("BRANTLEY")** (BM, DOB XX-XX-1969[1]). Therefore, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to establish probable cause to issue a complaint and an arrest warrant against BRANTLEY for a violation of 18 U.S.C. § 111(a)(1) and (b) as Assaulting, Resisting, or Impeding a Federal Agent by Using a Dangerous and Deadly Weapon.

## SUMMARY OF THE OFFENSE AND SUBSEQUENT INVESTIGATION

5. On January 21, 2025, I responded with elements of the Dallas Violent Crimes Task Force to an agent-involved shooting at 3441 Willow Crest Lane, Dallas, Texas, a location within the Dallas Division of the Northern District of Texas (NDTX). The shooting involved BRANTLEY and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a Special Agent

---

[1] I have redacted the defendant's full date of birth to comply with Federal Rule of Criminal Procedure 49.1. The full date of birth is provided to the Court separately through the Clerk's office.

**Affidavit—Page 2**

("SA") with the Drug Enforcement Administration (DEA). As such, SA ▮▮▮▮ is an officer and employee of the United States and of the DEA, an agency of the Executive Branch of the United States Government, as designated in 18 U.S.C. § 1114(a). SA ▮▮▮▮ was engaged in the performance of his official duties while conducting covert surveillance in his government vehicle in an unrelated federal matter while parked in front of 3441 Willow Crest Lane. The shooting took place while SA ▮▮▮▮ was in his vehicle. No injuries were reported.

6. FBI SA Matthew Dieterich and I conducted a post-*Miranda* interview of BRANTLEY in the back of SA Dieterich's vehicle. Dallas Police Department (DPD) Officer Camacho was present for the interview and his body worn camera was used to capture the interview. In sum and substance, BRANTLEY provided the statements that follow.

7. BRANTLEY received a call from a neighbor that lived across the street. She told BRANTLEY that a vehicle was parked in front of BRANTLEY'S house, 3441 Willow Creek Lane, for approximately 30 to 40 minutes. BRANTLEY said he put on his jacket and went out to see what was going on. BRANTLEY was still on the phone with the neighbor.

8. BRANTLEY approached the vehicle and pointed his hand up the street to indicate that he wanted the vehicle to leave. The man in the vehicle (SA ▮▮▮▮) shrugged.² BRANTLEY saw a police scanner in SA ▮▮▮▮ possession. SA ▮▮▮▮

---

² During the interview, BRANTLEY referred to SA ▮▮▮▮ as "that guy" or "the Hispanic guy." For clarity, this affidavit refers to him as SA ▮▮▮▮

Affidavit—Page 3

rolled down the window and BRANTLEY told him, "You can't sit here." SA ███ said "Why not? It's a public street." BRANTLEY responded with, "You can't sit in front of my house." SA ███ then reached under the seat and "bonked a horn" twice (referring to the siren). SA ███ then rolled up his window and BRANTLEY said, "You gotta go. When I come back, you don't want to be here." BRANTLEY stated he said this louder than a normal speaking voice but not loud enough for his voice to echo.

9.  BRANTLEY walked into his garage and retrieved his Kimber .45 caliber pistol from the console of his truck. BRANTLEY started walking back to the car with the pistol in his right hand by his side. BRANTLEY walked up the grass and made eye contact with SA ███ when he was between 10 and 15 feet away. As BRANTLEY approached with pistol in hand, SA ███ shot one time, breaking the glass of the front passenger-side window. BRANTLEY was not hit.

10. BRANTLEY dropped to the ground and rolled down the hill, still holding onto his gun. SA ███ got out and ordered BRANTLEY to put the gun down and show his hands. A black truck with flashing red and blue lights showed up and BRANTLEY threw his gun away. BRANTLEY believed he had the gun in his hand for approximately 10 to 15 seconds after rolling down the hill. BRANTLEY began complying with commands and was handcuffed and placed in the back of a DPD squad car. BRANTLEY believed he was on an open line with the neighbor who had called him during the entire incident. BRANTLEY voluntarily provided a written consent to search his cellular phone, a black iPhone 10.

11. SA Andrew Bringuel interviewed the neighbor from across the street who had been on the phone with BRANTLEY. In sum and substance, the neighbor provided the statements that follow.

12. The neighbor noticed a vehicle parked in front of BRANTLEY's house at approximately 2:45 p.m. The neighbor called BRANTLEY. BRANTLEY told the neighbor that he would check on it. The neighbor was on the phone with BRANTLEY throughout the entire event.

13. The neighbor heard the siren one time. The neighbor could not hear what the officer (SA ▮▮▮▮) was saying. The officer "blew off" BRANTLEY by leaving window up. The neighbor heard BRANTLEY say, "I don't give a fuck who you are." BRANTLEY then went back inside for a few seconds. BRANTLEY came back up and asked officer to leave. BRANTLEY walked back towards his house and the neighbor heard a shot. The neighbor saw BRANTLEY shoot in the air and heard two more shots.

14. The neighbor saw the officer get out his vehicle, open his back door and put on his vest. BRANTLEY saw the police and put up his hands. The neighbor saw multiple cars pull up. She then called 911.

15. The neighbor did not hear the officer tell BRANTLEY he was police or show credentials. She assumed the siren meant the officer might be police.

16. Agents located and collected a black iPhone and the Kimber pistol in the front yard. The pistol was loaded with bullets in the magazine and the chamber was empty. Photographs were taken of SA ▮▮▮▮ vehicle. A single gunshot hole was found

in the front-passenger window and a bullet hole was found in the brick of 3441 Willow Creek Lane.

17. BRANTLEY was placed under arrest.

## CONCLUSION

Based on your Affiant's training and experience and the facts as set forth in this affidavit, I submit that there is probable cause to believe that **MARCUS BRANTLEY (BM, DOB XX-XX-1969)** committed a violation of 18 U.S.C. § 111(a)(1) and (b), that is, Assaulting, Resisting, or Impeding a Federal Agent by Using a Dangerous and Deadly Weapon. In consideration of the foregoing, I respectfully request that this court authorize a Complaint and Arrest Warrant for MARCUS BRANTLEY.

_____
Daniel Berardicurti, Special Agent
Federal Bureau of Investigation

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1 on January 22, 2025.

_____
Brian McKay
United States Magistrate Judge
Northern District of Texas